UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| CELESTE PRETENDS EAGLE, INDIVIDUALLY AND AS SPECIAL ADMINISTRATOR/PERSONAL REPRESENTATIVE OF THE ESTATE OF JAYLENE PRETENDS EAGLE AND W.R.E., JR; AND ANNIE RED ELK, INDIVIDUALLY AND AS SPECIAL ADMINISTRATOR/ PERSONAL REPRESENTATIVE OF THE ESTATE OF WAYLON RED ELK, SR., | 5:22-CV-05083-RAL |
| Plaintiffs, | |
| vs. | OPINION AND ORDER DENYING MOTION TO DEFER AND GRANTING MOTION TO DISMISS |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

Plaintiffs Celeste Pretends Eagle—individually and as personal representative of the Estate of Jaylene Pretends Eagle and W.R.E., Jr.—and Annie Red Elk[1]—individually and as personal representative of the Estate of Waylon Red Elk, Sr.—sued Defendant United States of America under the Federal Tort Claims Act (FTCA). Plaintiffs claim that Oglala Sioux Tribe Department of Public Safety Correctional Officer Tyler Makes Him First (Makes Him First) while at a sanctioned party thrown by the Oglala Sioux Tribe Department of Corrections became intoxicated and then drove in a grossly negligent fashion, killing Waylon Red Elk, Sr. (Waylon), Jaylene

---

[1] At the motion hearing on September 6, 2023, Plaintiffs' counsel advised that Annie Red Elk died in December of 2022 and that Neil L. Red Elk is or will become the special administrator/personal representative of the Estate of Waylon Red Elk, Sr.

Pretends Eagle (Jaylene) and her unborn child, and the one-year-old child W.R.E., Jr. on November 4, 2017, within the exterior boundaries of the Pine Ridge Indian Reservation near Porcupine, South Dakota. Doc. 1.

The United States filed a Motion to Dismiss claiming lack of subject matter jurisdiction because Plaintiffs failed to sufficiently allege in their Complaint that Makes Him First is a federal official for purposes of the FTCA and because Plaintiffs failed to exhaust their administrative remedies through proper presentment of their claims. Docs. 10–11. Plaintiffs then filed a Motion to Defer under Federal Rule of Civil Procedure 56(d) requesting time for discovery to oppose the motion to dismiss, Doc. 21, which the United States opposes, Doc. 24. Because Plaintiffs fail to meet the required factors in Johnson v. United States, 534 F.3d 958 (8th Cir. 2008), Plaintiffs' Motion to Defer, Doc. 21, is denied. Such relief would be moot because under Eighth Circuit precedent, Plaintiffs failed to properly present their claims to the Tort Practice Branch when they did not provide proof that Phyllis Wilcox[2] and Annie Red Elk had the authority to file the claims. As such, the Motion to Dismiss, Doc. 10, is granted.

## I.    Motion to Defer

Plaintiffs have filed a Motion to Defer ruling of Defendant's Motion to Dismiss. Doc. 21. Plaintiffs argue that the case is relatively new and evidence relating to the case, specifically matters relating to Makes Him First's federal conviction for the killing of Waylon, Jaylene, and W.R.E., Jr., recently became available to them. Doc. 22 at 1. Additionally, Plaintiffs have not received Makes Him First's employment file, the related 638 contract,[3] employment requirements, or

---

[2] Phyllis Wilcox passed away between the time Plaintiffs submitted their Standard Form 95s and the start of the lawsuit.    Celeste Pretends Eagle replaced Ms. Wilcox as personal representative/special administrator of the estates of Jaylene Pretends Eagle and W.R.E., Jr.

[3] A "638 contract," or self-determination contract, is an agreement between a tribe and the federal government under the Indian Self-Determination and Education Assistance Act of 1975. The Act

information about whether Makes Him First was on a special errand or part of sanctioned activity while at the party with coworkers where he was supplied with alcohol. Id. at 2. Plaintiffs' attorney also submitted an affidavit and attachments regarding efforts the Plaintiffs have made to seek information and suggesting that limited information resulted despite the FTCA administrative claims and a tribal court case ending in a judgment against Makes Him First. Doc. 19 and attachments thereto.

Rule 56(d) of the Federal Rules of Civil Procedure allows a court to "defer considering a summary judgment motion or allow time for discovery '[i]f a nonmovant shows by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition.'" Anzaldua v. Ne. Ambulance & Fire Prot. Dist., 793 F.3d 822, 836 (8th Cir. 2015) (quoting Fed. R. Civ. Pro. 56(d)). The defendant resists the requested discovery, reiterates its argument for dismissal, and adds that "Fed. R. Civ. P. 56(d) is inapplicable to Fed. R. Civ. P. 12(b) motions." Doc. 24.

Notwithstanding the argument of the United States, "[c]ourts look to decisions under Rule 56 for guidance in determining whether to allow discovery on jurisdictional facts." Johnson v. United States, 534 F.3d 958, 965 (8th Cir. 2008). In Johnson, an FTCA case arising from South Dakota, the district court dismissed the plaintiff's claims on a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Id. at 960. On appeal the plaintiff argued "the district court erred in ruling on the government's 12(b)(1) motion without first allowing him the opportunity to conduct discovery" when there were statements that could indicate the government was refusing

---

allows tribes to enter into agreements with the federal government to administer services formerly administered by the federal government on behalf of the tribe. See Hinsley v. Standing Rock Child Protective Servs., 516 F.3d 668, 670 (8th Cir. 2008). The agreements are commonly referred to as "638 contacts," based on the public law number of the 1975 Act. See United States v. Schrader, 10 F.3d 1345, 1350 (8th Cir. 1993).

to turn over evidence. Id. at 962. The United States Court of Appeals for the Eighth Circuit disagreed with the plaintiff's argument that discovery should have been allowed, but noted that Rule 56 could provide guidance on whether to allow jurisdictional discovery before considering a 12(b)(1) motion. Id. at 965.

> To request discovery under Rule 56[(d)],[4] a party must file an affidavit describing: (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful.

Id. The plaintiff's affidavit in Johnson did not explain how the evidence sought would "raise a genuine issue of material fact relevant to whether the district court had subject matter jurisdiction under the FTCA." Id. Because the discovery sought had no relevance in determining the 12(b)(1) motion, the Eighth Circuit found no error in denying the plaintiff the opportunity to conduct discovery. Id.; see also Welter v. United States, 20-CIV-5029-JLV, 2021 WL 963567, at *4 (D.S.D. March 21, 2021) (denying discovery in an FTCA case because "the government has hidden nothing from plaintiff regarding the three 638 contracts or [the alleged tortfeasor's] employment" and "exploratory Rule 56(d) discovery is not justified"); Davis v. Anthony, Inc., 886 F.3d 674, 678 (8th Cir. 2018) (affirming denial of discovery in an ADA case where the request "is futile because [plaintiff] does not have standing to sue in this lawsuit").

In this case, the Plaintiffs' affidavit attached several documents suggesting that Plaintiffs have sought information about Makes Him First's activities without receiving all of what they sought. Doc. 19. Plaintiffs seek jurisdictional discovery to discover facts related to the 638

---

[4] The original quote references Rule 56(f); however, 56(f) was "recodified 'without substantial change' as Rule 56(d) effective December 1, 2010." U.S. Commodity Futures Trading Comm'n v. Kratville, 796 F.3d 873, 888 n.11 (8th Cir. 2015) (quoting Chambers v. Travelers Cos., Inc., 668 F.3d 559, 568 (8th Cir. 2012)).

contracts between the United States and the Oglala Sioux Tribe's Department of Corrections, specifically whether Makes Him First is a 638-contract employee and the scope of Makes Him First's employment as it related to the party that was allegedly hosted, sponsored, held, or maintained by Department of Corrections staff and supervisors. Id. at ¶¶ 14–15. The attachments to the affidavit show the efforts made by Plaintiffs to obtain information relating to the case, the difficulties in obtaining the information, as well as partial explanations of why the efforts were unsuccessful. Doc. 19-4; Doc. 19-5; Doc. 19-6 at 1; Doc. 19-10. One attachment reveals that the United States provided information related to the incident in April 2023, after this lawsuit commenced. Doc. 19-6. That document contains incident reports from the various responding officers and investigators, maps and diagrams of the crash scene, timeline of events and evidence collection, Certificate of Indian Blood, photos, an accident reconstruction, laboratory results, an eyewitness statement, and the CAD event log from Oglala Sioux Tribe Department of Public Safety dispatch on the night of the accident. Id.

Plaintiffs' affidavit falls short of what Johnson requires to justify jurisdictional discovery. Plaintiffs' affidavit does not explain "what facts are sought and how they are to be obtained" nor "how these facts are reasonably expected to raise a genuine issue of material fact," especially as to the presentment question. Johnson, 534 F.3d at 965; see Doc. 19. Indeed, neither the affidavit nor the attachments propose any plan for particular discovery. Plaintiffs in some attachments express an intent to file a motion to obtain Makes Him First's criminal file. Doc. 19-4 at 9; Doc. 19-6 at 1. Otherwise, the affidavit provides little information on what Plaintiffs seek and how that information might raise questions on jurisdiction. Moreover, even if this Court were to allow time for Plaintiffs to conduct jurisdictional discovery regarding whether Makes Him First was functioning under a 638 contract and within his scope of employment when he caused this horrible

5

motor vehicle accident, this Court would still have to dismiss the action because, under Eighth Circuit precedent, it was not properly presented.

## II.    Motion to Dismiss

### A.    Relevant Facts Taken from the Complaint

This case involves a tragic and horrendous accident on November 4, 2017, near Porcupine, South Dakota, within the exterior boundaries of the Pine Ridge Indian Reservation.  Doc. 1 at ¶¶ 4, 7.  Makes Him First was an employee of the Oglala Sioux Tribe Department of Public Safety in the Correctional Department presumably making him a federal official when working in that capacity.  Id. at ¶¶ 5, 7.  Before the fatal crash, Makes Him First allegedly attended an Oglala Sioux Tribe Department of Safety and Department of Corrections sponsored/attended event where the entity throwing the event supplied, provided, gave, and presented alcoholic beverages to Makes Him First.  Id. at ¶ 8.  Makes Him First became intoxicated at the gathering.  Id. at ¶ 7.  The supervisors at the Oglala Sioux Tribe Department of Safety and Department of Corrections sponsored/attended event then allowed Makes Him First to leave the gathering in an "obvious and dangerous drunken condition."  Id. at ¶ 8.

Upon leaving the gathering, Makes Him First got into his Nissan Titan Truck and drove northbound on a road known as BIA 27.  Id. at ¶ 7.  At the same time, Waylon, Jaylene, and their son W.R.E., Jr. were traveling southbound on BIA 27 in a Lexus sedan.  Id.  At the time of the crash, Jaylene was 7.5 months pregnant.  Id.  Makes Him First crossed the center line and entered into the southbound lane on BIA 27, striking the Lexus.  Id.  As a result of the crash, everyone inside the Lexus—Waylon, Jaylene, W.R.E., Jr., and the fetal child—were killed.  Id. at ¶ 9. Attachments to Plaintiffs' affidavit reveal that Makes Him First's truck struck the Lexus with such force that it pushed the Lexus backward and that the truck drove on top of the Lexus and then

flipped over. Doc. 19-6. Makes Him First's blood alcohol content was measured at .284%, Doc. 19-6 at 33, and he now is serving long sentences for involuntary manslaughter convictions. United States v. Makes Him First, 5:18-CR-50053-JLV; Doc. 55 (judgment of conviction showing three consecutive 64-month sentences—totaling 192 months—imposed by Judge Jeffrey L. Viken).

After the death of the Red Elk-Pretends Eagle family, Phyllis Wilcox (Wilcox), the mother of Jaylene, was appointed as the Estate Representative for Jaylene and W.R.E., Jr. Doc. 1 at ¶ 4. Upon Wilcox's death in 2021, Jaylene's sister, Plaintiff Celeste Pretends Eagle, was appointed as the Special Administrator/Personal Representative of the Jaylene and W.R.E., Jr. estates on August 19, 2021. Id. Plaintiff Annie Red Elk (Red Elk), the mother of Waylon, was appointed as the Special Administrator/Personal Representative of Waylon's estate on October 30, 2018. Id.

Red Elk and Wilcox then filed a federal tort claim for the deaths of their loved ones by submitting a Standard Form 95 (SF95) for each respective estate on July 24, 2019. Doc. 1-1. The SF95 forms listed Red Elk and Wilcox as the representatives of the estates, but did not provide evidence of representation. Docs. 1-1, 19-2. The claims were denied on March 16, 2021, based upon the information and belief of the United States that Makes Him First was not acting within the scope of his employment at the time of the accident. Id. The United States did not question or ask for documentation of Red Elk's or Wilcox's authority to act on behalf of the estates. Docs. 1-1, 19-9. Red Elk and Wilcox sought reconsideration of their claims on September 15, 2021. Id. The Department of Interior denied the requests for reconsideration on April 1, 2022, for the same reason as the initial denial of the claims. Id. After reconsideration was denied administratively, Red Elk and Celeste Pretends Eagle, as the new administrator for Jaylene's and W.R.E., Jr.'s estates, filed this action seeking funeral expenses, loss of companionship damages, survivorship damages for the Red Elk-Pretends Eagle family, and exemplary/punitive damages. Doc. 1.

7

The United States filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). First, the United States argues that Plaintiffs failed to properly allege that Makes Him First is a federal official because the Complaint does not state that Makes Him First's employer operates pursuant to a 638 contract. Doc. 11. Next, the United States argues that the administrative claims were not properly presented because the SF95s failed to state that Wilcox and Red Elk were the administrators of the estates or provide proof of that fact to show they had the authority to bring the claim. Id. Because the proper presentment is a jurisdictional requirement for an FTCA case under Eighth Circuit precedent, the United States argues that Plaintiffs failed to state a claim upon which relief could be granted. Id. Plaintiffs oppose the motion arguing that they sufficiently presented their administrative claims. Plaintiffs also argue that their allegations properly allege and trigger FTCA jurisdiction. Doc. 20.

### B. Standard of Review on Motion to Dismiss

A challenge to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) can be either facial or factual in nature. Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Regardless of whether the jurisdictional attack is facial or factual, the plaintiff has the burden of proving subject matter jurisdiction. V S Ltd. P'ship v. Dep't of Hous. & Urban Dev., 235 F.3d 1109, 1112 (8th Cir. 2000). Under a facial attack, the "court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Jones v. United States, 727 F.3d 844, 846 (8th Cir. 2013) (quoting Osborn, 918 F.2d at 729 n.6). As such, courts must accept a plaintiff's factual allegations as true and make all inferences in the plaintiff's favor but need not accept a plaintiff's legal conclusions. Retro Television Network, Inc. v. Luken Communs., LLC, 696 F.3d 766, 768–69 (8th Cir. 2012). When determining whether to grant a Rule 12(b)(6) motion for failure to state

8

a claim, a court generally must ignore materials outside the pleadings, but it may "consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned . . . without converting the motion into one for summary judgment." Dittmer Props., L.P. v. FDIC, 708 F.3d 1011, 1021 (8th Cir. 2013) (cleaned up and citation omitted).

In contrast, where a factual attack is made on the court's subject-matter jurisdiction, because "its very power to hear the case" is at issue, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," without transforming the motion into one for summary judgment. Osborn, 918 F.2d at 730 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)); see also Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 451 (6th Cir. 1988) ("When a challenge is to the actual subject matter jurisdiction of the court, as opposed to the sufficiency of the allegation of subject matter jurisdiction in the complaint which may be cured by an amendment to the pleading, the district court has the power to resolve any factual dispute regarding the existence of subject matter jurisdiction."). In a factual attack on a court's jurisdiction, "the court considers matters outside the pleadings, and the non-moving party does not have the benefit of [Rule] 12(b)(6) safeguards." Osborn, 918 F.2d at 729 n.6 (internal citation removed). In deciding a factual challenge to subject matter jurisdiction, the court need not view the evidence in the light most favorable to the non-moving party. See Osborn, 918 F.2d at 729 n.6, 730.

Here, the United States makes a mixed factual and facial challenge. Doc. 23 at 1. The argument that Plaintiffs failed to properly allege that Makes Him First was acting as a federal official is a facial challenge. Specifically, the United States argues that Plaintiffs failed to allege

9

on the face of their pleadings that the Oglala Sioux Tribe's Department of Corrections operates under a 638 contract and that Makes Him First was acting within the scope of his employment under that agreement. Id. at 2. The United States' argument that Plaintiffs failed to present the FTCA claim properly is a factual challenge to jurisdiction. Id.

To survive a motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," id. at 678, "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely,'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Still, "conclusory statements" and "naked assertion[s] devoid of further factual enhancement" do not satisfy the plausibility standard. Iqbal, 556 U.S. at 678 (citation and internal marks omitted).

## C. Agency of the United States

"The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). Congress can waive the United States' sovereign immunity, and "prescribe the terms and conditions on which the United States consents to be sued, and the manner in which the suit shall be conducted." Mader v. United States, 654 F.3d 794, 797 (8th Cir. 2011) (cleaned up and citations omitted). In a case against the United States, the waiver of sovereign immunity defines the bounds of a court's jurisdiction. See F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994); United States v. Navajo Nation, 537 U.S. 488, 502 (2003)

10

(quoting <u>United States v. Mitchell</u>, 463 U.S. 206, 212 (1983)) (explaining that the United States' consent to suit is a "prerequisite for jurisdiction").

In 1946, Congress passed the FTCA, which makes the United States "liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." <u>United States v. Orleans</u>, 425 U.S. 807, 813 (1976). The FTCA was designed both to avoid the injustice of "having meritorious claims hitherto barred by sovereign immunity," and to avoid the additional burden that Congress had of "investigating and passing upon private bills seeking individual relief." <u>United States v. Muniz</u>, 374 U.S. 150, 154 (1963). As relevant to this case, the FTCA waives sovereign immunity for

> personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

Congress has expanded the liability of the United States under the FTCA to employees working pursuant to 638 contracts entered into by Indian tribes or tribal organizations and the Federal Government. <u>Runs After v. United States</u>, 2012 WL 2951556 at *3 (D.S.D. July 19, 2012) (citing <u>Demontiney v. U.S. ex rel. Dep't of Interior</u>, 255 F.3d 801, 807 (9th Cir. 2001)); Felix Cohen, <u>Federal Indian Law</u> § 22.02[4][a] (2005). The United States therefore can be liable for tortious acts committed by employees of the tribal detention center, which operates pursuant to a 638 contract. <u>See</u> 25 U.S.C. § 5321. The United States does not dispute that, Doc. 23 at 2, but argues for dismissal because the Complaint fails to specifically allege that the Department of Corrections in the Oglala Sioux Tribe Department of Public Safety operates pursuant to a 638 contract and therefore fails to properly allege jurisdiction.

Plaintiffs allege jurisdiction "pursuant to 28 U.S.C. Section 1346(b) and the Federal Tort

Claims Act, 28 U.S.C. Section 2671, et seq., as amended [and] Pub. L. No. 103-138." Doc. 1 at ¶

6. The Complaint does state that Makes Him First is an employee of the Department of Public

Safety, Department of Corrections. The fact that the Oglala Sioux Tribe Department of Public

Safety receives funds under a 638 contract is well known to this Court, is a matter of public record,

and has been noted in certain legal opinions. See, e.g., Oglala Sioux Tribe v. United States, No.

22-CIV-05066-RAL, Doc. 78 at 8–9, 2023 WL 3606098 (D.S.D. May 23, 2023); Blacksmith v.

United States, 06-CIV-5022-AWB, 2008 WL 11506053, at *3 (D.S.D. Jan. 16, 2008) ("The

Government admits that the Department of Public Safety of the Oglala Sioux Tribe receives

funding from the BIA pursuant to a '638 contract' and also uses additional federal funding for its

law enforcement endeavors."); United States v. Janis, 810 F.3d 595, 597 (8th Cir. 2016) ("Janis

does not dispute that the BIA entered into a 638 contract with the OST Department of Public

Safety."). This Court is disinclined to dismiss simply because Plaintiffs failed to allege the

existence of the 638 contract; even if inclined to dismiss on such grounds, this Court would grant

dismissal without prejudice and delay entry of dismissal for some days to allow Plaintiffs to amend

to allege the well-known fact that a 638 contract funds the Tribe's Department of Corrections.

The United States argues that even if the existence of a 638 contract were sufficiently

alleged, the Plaintiffs still failed to allege that Makes Him First was acting in the scope of his

employment at the time of the crash. The Complaint alleges that the crash occurred after a work-

sponsored party where alcohol was supplied with the knowledge, if not the endorsement, of the

supervisors at the Oglala Sioux Tribe Department of Public Safety, Department of Corrections.

The Supreme Court of South Dakota has found employer liability when it was foreseeable that by

failing to supervise an employee "afforded free reign to consume alcohol while at work, that the

employee could abuse the alcohol, leave the premises after work unfit to drive, and injure a member of the general public." McGuire v. Curry, 766 N.W.2d 501, 509 (S.D. 2009). Granted, the McGuire case involves facts far different than what is alleged here.

As with the silence on the existence of a 638 contract, Plaintiffs' Complaint does not allege explicitly scope of employment. But it does allege "[a]t all times relevant herein . . . Makes Him First . . . was an employee of the Oglala Sioux Tribe . . . Department of Public Safety in its Corrections Department." Doc. 1 at ¶ 5. The Complaint also alleges that the Department of Public Safety is an agency of the United States rendering Makes Him First "a federal official." Id. at ¶ 7. And the Complaint asserts that the United States through Makes Him First's supervisors were negligent in "supplying, providing, giving, and/or presenting intoxicating beverages" to Makes Him First before the collision. Id. at ¶ 8. As with the oversight in alleging a 638 contract, even if inclined to dismiss on these grounds, this Court would allow Plaintiffs an opportunity to amend their Complaint to more explicitly state that Makes Him First was acting within the scope of his employment and that his employer, the Oglala Sioux Tribe Department of Public Safety, Department of Corrections, operated pursuant to a 638 contract in 2017. The second argument for dismissal—lack of jurisdiction because Plaintiffs failed to properly present their administrative claims—is one where mere amendment to clarify the pleading does not solve the issue.

### D. Proper Presentment

The FTCA waives sovereign immunity, but only if a plaintiff satisfies the procedural requirements of 28 U.S.C. § 2675(a) by presenting the claim to the proper federal agency. See Mader, 654 F.3d at 798; Bellecourt v. United States, 994 F.2d 427, 430 (8th Cir. 1993); Runs After, 2012 WL 2951556 at *3–4. Specifically, § 2675(a) provides that an FTCA action "shall not be instituted upon a claim against the United States . . . unless the claimant shall have first

13

presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency." The presentment requirement of § 2675(a) "is jurisdictional and must be pleaded and proven by the FTCA claimant." Bellecourt, 994 F.2d at 430; see also Mader, 654 F.3d at 805 ("We have long held that compliance with § 2675(a)'s presentment requirement is a jurisdictional precondition to filing an FTCA suit in federal district court.").

Although the FTCA does not identify the exact information plaintiffs must provide to properly "present" their claim to a federal agency, the Attorney General has promulgated a regulation defining § 2675(a)'s presentment requirement. See 28 C.F.R. § 14.2(a); Mader, 654 F.3d at 798. Section 14.2(a) reads:

> For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, [1] an executed Standard Form 95 or other written notification of an incident, [2] accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and [3] the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

28 C.F.R. § 14.2(a).

Prior to 2011, there was conflicting authority within the Eighth Circuit concerning whether representatives of FTCA claimants had to provide evidence of authority to act on behalf of such claimants to satisfy § 2675(a)'s presentment requirement. One Eighth Circuit panel held that § 2765(a) requires a representative to submit evidence of authority to act for an FTCA plaintiff, Lunsford v. United States, 570 F.2d 221, 225–26 (8th Cir. 1977), but a later Eighth Circuit panel deemed a plaintiff to satisfy § 2675(a)'s presentment requirement when the plaintiff provides the relevant agency with "(1) sufficient information for the agency to investigate the claims . . . and (2) the amount of damages sought." Farmers State Sav. Bank v. Farmers Home Admin., 866 F.2d

14

276, 277 (8th Cir. 1989). The Eighth Circuit addressed and resolved this split in authority among Eighth Circuit panels in its en banc decision in Mader.

In Mader, the widow of a man who had committed suicide after a doctor at the Veterans Affairs (VA) hospital altered his course of treatment completed a SF95 on which she claimed to be the personal representative of her husband's estate. Mader, 654 F.3d at 798–99. The widow's attorney signed the form and sent it to the VA. Id. at 799. Upon receipt of the form, the VA sent the widow's attorney a letter requesting evidence of the widow's authority to represent her husband's estate. When no one responded to the letter, the VA telephoned the widow's attorney several times, again asking for evidence of authority. Id. Neither the widow nor the widow's attorney ever provided such authority. The VA denied the widow's claim because of her failure to provide evidence of her authority and, in the alternative, denied the claim on the merits. Id. The widow filed an FTCA claim against the United States in federal district court, purporting to be her husband's personal representative. Id. The district court found that the widow had failed to provide evidence of her authority under § 2675(a) and dismissed the widow's claim for lack of federal subject matter jurisdiction. Id. An Eighth Circuit panel reversed and decided that § 2675(a) did not require the widow to submit evidence of her authority. The United States sought and was granted rehearing en banc.

Before the en banc Eighth Circuit, the widow argued that the proper standard to determine whether a claimant had satisfied § 2675(a)'s presentment requirement was the "minimal notice" standard of Farmers Home Admin. Id. By a seven-to-five vote, the Eighth Circuit disagreed. When interpreting the meaning of the term "presented" under § 2675(a), the Eighth Circuit considered the text of the FTCA and "its context, object, and policy." Id. at 800. Considering amendments to the FTCA codified at 28 U.S.C. §§ 2672 and 2675(a), the Eighth Circuit reasoned

that Congress "intended to give agencies the first opportunity to meaningfully consider and settle FTCA claims." Id. at 803. Evidence of an FTCA plaintiff's authority to represent a claim's beneficiaries is important to the settlement process envisioned by Congress, because "agencies simply cannot meaningfully consider FTCA claims with an eye towards settlement if representatives fail to first present evidence of their authority to act on behalf of claims' beneficiaries." Id. In keeping with congressional intent to allow federal agencies the initial opportunity to review FTCA claims, the Eighth Circuit held that "a properly 'presented' claim under § 2675(a) must include evidence of a representative's authority to act on behalf of the claim's beneficiaries under state law."[5] Id. The Eighth Circuit further held that failure to properly present an FTCA claim is a jurisdictional defect because "a claim that fails to satisfy § 2675(a)'s requirements remains inchoate, unperfected, and not judicially actionable." Id. at 807. Because the widow in Mader had failed to provide such evidence despite requests from the VA, the Eighth Circuit affirmed the district court's decision to dismiss the widow's claim for lack of subject matter jurisdiction. Id. at 808.

---

[5] The evidence-of-authority requirement is spelled out in 28 C.F.R. § 14.2(a) and not explicitly in § 2675(a). Significantly, the majority in Mader read the evidence-of-authority requirement of the regulation into the jurisdictional presentment requirement of § 2675(a), but other circuits have refused to do so. Compare Mader, 654 F.3d at 804–08, with Transco Leasing Corp. v. United States, 896 F.2d 1435, 1443 (5th Cir. 1990) ("Because . . . the regulations promulgated pursuant to § 2672 are independent of the jurisdictional notice requirements of § 2675(a), the Bank's failure to comply with Regulation 14.3(e) is not a jurisdictional bar to the claims of [the decedent's] widow and daughter."); Knapp v. United States, 844 F.2d 376, 379 (6th Cir. 1988) ("[T]he regulations contained in 28 C.F.R. §§ 14.1–14.11 govern administrative settlement proceedings; they do not set federal jurisdictional prerequisites.") (internal marks and citations omitted); GAF Corp. v. United States, 818 F.2d 901, 905 (D.C. Cir. 1987) (holding that the regulations contained in 28 C.F.R. §§ 14.1–14.11 "do not govern the jurisdictional requirements of § 2675(a)"); and Warren v. U.S. Dep't of Interior, 724 F.2d 776, 778–79 (9th Cir. 1984) (declining to interpret the evidence-of-authority requirement as jurisdictional). Nonetheless, this Court is bound to follow Eighth Circuit precedent. See Hood v. United States, 342 F.3d 861, 864 (8th Cir. 2003) ("The District Court . . . is bound . . . to apply the precedent of this Circuit.").

16

The Plaintiffs here submitted executed SF95s with written notification of the incident. Doc. 19-2. The SF95s asserted a claim for money damages in the amount of $10,015,000 for Waylon and Jaylene, id. at 1, 11, and $10,000,000 for W.R.E., Jr., id. at 6. The only issue on presentment is whether the capacity of Wilcox and Red Elk was properly documented. The United States argues that because the cover letter to the SF95s says that the claims were for Waylon, Jaylene, and W.R.E., Jr., the claims were improperly presented. The United States notes that its liability under the FTCA is generally determined under state law. Molzof v. United States, 502 U.S. 301, 305 (1992) ("[T]he extent of the United States' liability under the FTCA is generally determined by reference to state law."). Then the United States posits that state law specifies that only a personal representative can make a wrongful death claim. SDCL § 21-5-5 (mandating that wrongful death actions "be brought in the name of the personal representative of the deceased person"). Red Elk and Wilcox, however, were identified as the claimants in the SF95s, each in the capacity as "representative." Doc. 19-2 at 1, 6, 11 (Box 2). While the cover letters to the SF95s state that the claims are for Waylon, Jaylene, and W.R.E., Jr., the signature block discloses that Plaintiffs' attorney is acting for "Phyllis Wilcox on behalf of the Estate of Jaylene Pretends Eagle-Red Elk, [W.R.E.,] Jr., and Unborn Baby (Deceased) and Annie Red Elk for the Estate of Waylon Red Elk, Sr., deceased." Id. at 17–22. That same signature block appears on the requests for reconsideration, and the subject line of the requests also states that Red Elk and Wilcox are acting "on behalf of" or "as Special Administrator of" the various estates. Id. at 23–28. Indeed, the Tort Practice Branch identified Red Elk and Wilcox as the claimant and "representative." Doc. 12 at ¶ 5.

The United States also argues that because Plaintiffs failed to provide evidence to the Tort Practice Board of Red Elk's or Wilcox's authority as the appointed personal representatives of the

Red Elk-Pretends Eagle family estates, they failed to properly present their claim and now cannot state claims as a result. The attachments to the SF95s do not provide documentation that Wilcox or Red Elk are the personal representative or the administrator of the estates. Rather, they describe the familial relationships of Wilcox and Red Elk to the deceased, which is insufficient to demonstrate authority to proceed with the action. See Rollo-Carlson v. United States, 971 F.3d 768, 771 (8th Cir. 2020) (dismissing the FTCA action brought by the decedent's mother for lack of jurisdiction and noting her "status as next-of-kin is not synonymous with her status as appointed trustee under Minnesota law"). While the signature blocks and letters requesting reconsideration of the initial denials state that Wilcox and Red Elk are the "Special Administrators" of the estate, none of the submissions to the Tort Practice Branch supplied proof of Wilcox's and Red Elk's status as the personal representatives of the estates. Doc. 19-2 at 17–28.

Unlike in Mader, nothing in the record suggests that the administrative agency reached out for more information or proof of Wilcox's or Red Elk's authority to act on behalf of the estates. The various administrative denials contained the subject line of "Federal Tort Claims Act Claim of" Wilcox and Red Elk "for the death of" Waylon, Jaylene, or W.R.E., Jr. Doc. 19-9 at 1, 3, 5, 7, 9, 11. Also, unlike in Mader, the United States had information apart from the SF95s from which to glean that Wilcox was an authorized representative/special administrator of one of the estates. Part of what Plaintiffs filed to oppose the motion to dismiss was a July 24, 2018 letter— sent coincidentally exactly one year before the SF95s dated July 24, 2019—that Plaintiffs' counsel sent to the United States Department of Interior, Bureau of Indian Affairs' Office of Justice Services for "Phyllis Wilcox on behalf of the Estate of Jaylene Pretends Eagle-Red Elk, [W.R.E., Jr.,] and Jaylene's (unborn Baby), (Deceased) in this potential wrongful death action" seeking to obtain information. Doc. 19-4; see also Doc. 28. At the motion hearing, Plaintiffs offered, and

this Court received, a copy of this letter showing that Plaintiffs' counsel enclosed "Letters of Administration & Conservatorship" from the Oglala Sioux Tribal Court documenting the appointment of Phyllis Wilcox as "the Administrator over the estate of Jaylene Pretends Eagle." Doc. 28 at 3–5. The Letters of Administration & Conservatorship, however, do not reflect an appointment for the estate of W.R.E., Jr., and Plaintiffs' counsel did not submit the appointment papers for Red Elk. See Doc. 28. Indeed, in the Authorization for Release of Information, Wilcox signs only "on behalf of the Estate of Jaylene D. Pretends Eagle-Red Elk (Deceased)." Doc. 19-4 at 3. The response of the Supervisory Special Agent dated July 31, 2018, included:

> Your client has professed status as a Representative of the Estate of Jaylene Pretends Eagle-Red Elk, [W.R.E., Jr.,] and Jaylene's (unborn baby), please provide a copy of the appointment document.

Doc. 19-4 at 5. The record is devoid of any indication of Plaintiffs' response, if any, to that request.

The most closely analogous case within the Eighth Circuit appears to be from this very court. See Runs After v. United States, No. 10-CIV-3019-RAL, 2012 WL 2951556 (D.S.D. July 19, 2012). In Runs After, a juvenile was placed in a detention center operated by a tribe pursuant to a 638 contract. Id. at *1. While in the facility, other detainees allegedly sexually assaulted and branded the juvenile. Id. The attorney for the juvenile's guardian filed a SF95 form as a precursor to an FTCA case, claiming negligent supervision of the detainees. Id. The guardian was not mentioned in the initial SF95 and instead the attorneys were listed as the juvenile's representatives. Id. at *2. Upon receipt of the SF95, the United States twice requested evidence of the attorney's authority to represent the juvenile. Id. In response to the second request, the attorneys sent the retainer agreement but no evidence that the juvenile's guardian was, in fact, the juvenile's legal custodian. Id. The only evidence the United States had regarding the proof of guardianship was a cash bond form signed by the person as guardian. Id. at *6.

When analyzing the case under the Mader decision, this Court reluctantly concluded that the juvenile's claims had not been properly presented. The guardian had not provided evidence of her authority to bring the administrative claim despite being requested to do so. Id. The United States could not rely on the cash bond form, the only evidence of the guardianship, as conclusively establishing the guardianship. Id. Notably, between the time of the cash bond and the SF95, the juvenile's guardian changed from the initial guardian, to another family member, and back to the initial guardian. Id. Even though, unlike Mader, the guardian in Runs After had actual authority to bring the claim, without evidence of that authority, federal agencies lacked assurance of the claimant's authority to comfortably settle the claim, which was a factor driving the Mader decision. Id. (citing Mader, 654 F.3d at 803). Indeed, "nothing in the majority opinion in Mader . . . suggest[s] that an effort by an FTCA claimant that falls short of providing proof of representative authority under the Eighth Circuit's interpretation of § 2675(a) is sufficient to avoid dismissal of the claim." Id. Because the claim was not properly presented, this Court dismissed the case, noting the harshness involved in dismissing a juvenile's claim based on deficient presentment by the guardian. Id. at *8.

Unlike in Runs After and Mader, the United States after receiving the SF95s did not request proof of the authority of Wilcox or Red Elk to present their claims.[6] But, the majority decision in Mader did not turn on the claimant's failures to respond to requests for proof of authorization. Rather, the majority wrote:

> [W]e hold that a properly "presented" claim under § 2675(a) must include evidence of a representative's authority to act on behalf of the claim's beneficiaries under state law.

---

[6] The United States had sought that proof in a letter dated July 31, 2018, sent nearly a year before the SF95s, apparently without receiving a response to that particular request. Doc. 19-4 at 5.

Mader, 654 F.3d at 803. The failure of the Tort Practice Branch to request proof of authority from Wilcox and Red Elk does not waive the requirement or preclude the United States from now arguing that Plaintiffs failed to meet their burden. See Rollo-Carlson, 971 F.3d at 771. Without such evidence being presented by Plaintiffs as part of their SF95 or supplements, the claims were not properly presented under Mader. According to the Mader majority, providing this evidence of authority "is not a pointless administrative hurdle—it is fundamental to the meaningful administrative consideration and settlement process contemplated," and strict compliance with the presentment requirement is a jurisdictional prerequisite. Mader, 654 F.3d at 803–04.

The proof of Wilcox's authority to act for the Estate of Jaylene Pretends Eagle one year prior to the SF95s in connection with Plaintiffs' request for information does not alter this result. First, and most importantly, the request for information in July of 2018 does not satisfy the requirement, as applied in Mader, of a properly presented claim in July of 2019 under § 2675(a) and the implementing regulation. Second, there is nothing in the record to show that proof of Wilcox's authority to act for W.R.E., Jr. was provided, even though that was requested. See Doc. 19-4 at 5. Third, at the time of the request for information and thereafter, Red Elk did not furnish proof of authority to act for the Estate of Waylon Red Elk, Sr. Fourth, the United States could not reliably assume that Wilcox's authority to act for the estate of Jaylene Pretends Eagle in July of 2018 necessarily meant she had the same authority in July of 2019 when she submitted a SF95.

Though this Court wishes the result could be different, this Court must dismiss the action for a lack of subject matter jurisdiction under Mader. If the five-judge dissent in Mader were the law of this circuit, the result would be different. But this Court must follow the circuit precedent set by Mader.

III.    **Conclusion**

Based on the reasoning above it is hereby

ORDERED that Plaintiffs' Motion to Defer, Doc. 24, is denied.  It is finally

ORDERED that the United States' Motion to Dismiss, Doc. 10, is granted.

DATED this 14th day of September, 2023.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE